UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-20187-GAYLES/TORRES

**ROYAL CARIBBEAN CRUISES LTD., a foreign corporation, d/b/a Royal Caribbean International**,

    Plaintiff,

v.

**CAPITAL JAZZ INC., a foreign corporation**,

    Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court upon Plaintiff / Counterclaim Defendant Royal Caribbean Cruises Ltd.'s Motion to Dismiss (the "Motion") [ECF No. 54]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the following reasons, the Motion is granted in part and denied in part.

### BACKGROUND[1]

On May 30, 2019, Defendant / Counterclaim Plaintiff Capital Jazz, Inc. ("Capital Jazz"), a music promoter, executed an agreement (the "Charter Agreement") with Royal Caribbean Cruises Ltd. ("RCCL") to charter RCCL's cruise ship, the *M/V Independence of the Seas* (the "Ship"). Capital Jazz entered into the Charter Agreement to conduct a jazz cruise that would feature performances, workshops, lectures, meet and greets, and other sessions (the "Jazz Cruise").

---

[1] As the Court proceeds on a motion to dismiss, it accepts the allegations in Defendant's Amended Counterclaims, [ECF No. 47], as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). Moreover, the Court may properly consider the exhibits attached to the Amended Counterclaims. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." (citation omitted)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Pursuant to the Charter Agreement, Capital Jazz was to pay RCCL for the guest accommodations, including a security deposit and advanced revenue and gratuity. The Jazz Cruise was to set sale on January 16, 2021, from Fort Lauderdale, Florida and visit ports of call in Jamaica, Bonaire, and Aruba. The overwhelming majority of guests who purchased tickets for the Jazz Cruise were African American and over the age of 60.

On March 14, 2020, due to the COVID-19 pandemic, the Centers for Disease Control and Prevention (the "CDC") issued an Order prohibiting cruise ships from embarking or disembarking in the United States. Accordingly, both parties agreed that the Jazz Cruise could not and should not proceed as scheduled. On August 10, 2020, the parties executed Amendment No. 1 to the Charter Agreement, agreeing to reschedule the Jazz Cruise to January 14, 2022, with a new itinerary. By October 2021, Capital Jazz had paid RCCL $4,485,022.54 for the entire "Guaranteed Accommodation Amount[,]" "Guaranteed Gratuity Amount[,]" and security deposit. [ECF No. 47 at ¶ 41].

On November 26, 2021, the World Health Organization identified a new COVID-19 variant, Omicron. Subsequently, there was a surge of Omicron cases, leading to renewed and/or intensified restrictions at the public and private levels, including on international travel. Though some Jazz Cruise guests sought to cancel their tickets due to the surge in cases, there remained a significant number of guests and artists to continue with the programming. In light of governmental disputes during this time period regarding whether cruise lines could require guests to provide proof of COVID-19 vaccination, on December 24, 2021, the parties executed Amendment No. 2 to the Charter Agreement. Amendment No. 2 substituted Bimini, Bahamas for Bonaire as a port of call at RCCL's insistence because vaccinations were required to disembark in Bimini; thus,

guests were required to have the necessary vaccination documents. Amendment No. 2 also provided that

> [Capital Jazz] shall comply with all laws, regulations, codes, or ordinances established by any governmental authority having jurisdiction over the Cruise of the Vessel, including but not limited to, any laws, regulations, codes, ordinances or public health guidelines pertaining to SARS-CoV-2COVID-19 or other communicable disease, and shall ensure that its employees and subcontractors also comply with the same. To the extent that any applicable law, regulation, code ordinance, guideline or other governmental requirement is inconsistent with Cruise Line's Public Health Protocols, [Capital Jazz] shall comply with the stricter requirement.

[ECF No. 50 at ¶ 51 (under seal)].

On December 30, 2021, the CDC issued a Travel Health Notice raising the warning for cruise ship travel to red, the highest level, due to the COVID-19 outbreak (the "Notice"). The Notice recommended avoiding cruise ship travel. Due to the Notice and in an attempt to comply with Amendment No. 2, Capital Jazz immediately and repeatedly reached out to RCCL to discuss the safety of the Jazz Cruise and whether alternative arrangements should be made. RCCL, however, initially did not respond to the repeated communications. When RCCL finally did respond, it would not agree to discuss the issues until January 7, 2022, only a week before the Jazz Cruise sail date.

Around this time, the CDC placed the Ship in a classification category identifying a heightened level of COVID-19 infections and potential need for investigation. On January 5, 2022, it was reported that a RCCL vessel had to return to port in Hong Kong because passengers and/or crew contracted COVID-19 and the passengers had to remain on the ship while testing was completed. On January 7, 2022, Capital Jazz learned that RCCL cancelled cruises of four ships scheduled between January 8 through March 7 because they could not be safely operated with a surge of COVID-19 infections. Additionally, during the week of January 3, 2022, members of Capital Jazz's staff contracted COVID-19 and some staff refused to patriciate in the Jazz Cruise

for fear of being infected. Artists also began refusing to perform because of the virus. Meanwhile, as Capital Jazz was waiting for a response from RCCL, it received multiple inquiries from customers of the Jazz Cruise about its status and the Ship's safety.

The parties finally spoke on January 7, 2022. However, RCCL provided no definitive information about its staff's infection rate or the seaworthiness of the ship. RCCL also declined to discuss terms for rescheduling the Jazz Cruise or committing to a specific itinerary. Instead, RCCL agreed to revisit the issues on January 10, 2022, and a conference call was scheduled for that day. Nevertheless, Capital Jazz published a notice on its website that its current Jazz Cruise programming would not be available but did not cancel the Charter Agreement as it planned to discuss alternative scaled-back programming with RCCL on the call if it insisted the Jazz Cruise must continue. However, RCCL cancelled the January 10 call despite Capital Jazz asking to proceed with the call and advising RCCL that it had not cancelled the Jazz Cruise. Then, on January 11, 2022, as customers attempted to check in for the cruise, RCCL provided a notice that the cruise was cancelled for "[t]he safety and well-being of [its] guests and crew . . . in light of current regional travel conditions[.]" [ECF No. 47 at ¶ 75].

Capital Jazz alleges that RCCL cancelled the Jazz Cruise because of COVID-19 infections present amongst its crew and the general unsafety and unseaworthiness of the Ship. On January 10, 2022, the CDC designation for the Ship stated that "[t]he CDC has started an investigation and the [S]hip remains under observation." *Id.* at ¶ 77. RCCL also cancelled subsequent scheduled cruises for the Ship and other vessels.

**PROCEDURAL HISTORY**

On January 13, 2022, RCCL initiated this action against Capital Jazz. [ECF No. 1]. On March 9, 2022, RCCL filed its two-count Amended Complaint for anticipatory breach of contract

and breach of contract. [ECF No. 23]. On March 23, 2022, Capital Jazz filed its Answer with Affirmative and Additional Defenses and Counterclaims. [ECF No. 34]. RCCL moved to dismiss the Counterclaims for failure to state a claim. [ECF No. 39]. The Court granted the motion, dismissing the Counterclaims without prejudice, finding that:

> [T]he Amended Counterclaim is an impermissible shotgun pleading because "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). Counts I and II of the Amended Counterclaim are also deficient because Defendant fails to allege the contractual provisions that Plaintiff breached. *See Alvarez v. Royal Caribbean Cruises*, Ltd., 905 F. Supp. 2d 1334, 1340 (S.D. Fla. 2012) ("To adequately allege a breach of contract claim, Plaintiffs are required to point toward an express provision in the contract that creates the obligation allegedly breached."). Furthermore, as pled, Counts III through V of the Amended Counterclaim appear to be affirmative defenses not individual causes of action.

[ECF No. 45]. Subsequently, Capital Jazz filed its Amended Counterclaims. [ECF No. 47]. Thereafter, RCCL filed the instant Motion. [ECF No. 54].

**LEGAL STANDARD**

A motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standards as a motion to dismiss a complaint. *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 306, 308 (S.D. Fla. 2001). To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he

pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether [its] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

## DISCUSSION

In its Amended Counterclaims, [ECF No. 47], Capital Jazz pleads seven counts: Counts I and II allege Unjust Enrichment/Restitution; Counts III, VI, and VII allege Breach of Contract; and Counts IV and V allege Breach of Warranty. RCCL seeks dismissal of Counts I–V. [ECF No. 54]. The Court will address each count in turn.

**I.      Counts I and II: Unjust Enrichment/Restitution**

"Under Florida law, a claim for unjust enrichment is 'to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.'" *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101 (11th Cir. 2021) (citation omitted). "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Id.* (citation omitted).

In its Amended Counterclaims, Capital Jazz contends that there was a "bargained for exchange in the Charter Agreement" but because of COVID-19 "[p]erformance of the fundamental bargained for exchange was rendered impossible" and the "fundamental purpose of the Charter Agreement" was frustrated, relieving the parties of their contractual responsibilities. [ECF No. 47

at ¶¶ 79, 80, 87, 94, 95, 97]. The claims proceed to list sections of the Charter Agreement that were impacted. *Id.* at ¶¶ 88, 89, 98. However, "an unjust enrichment claim is precluded by the existence of an express contract between the parties concerning the same subject matter." *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015) (internal quotation marks and citation omitted). As pled, the claims are governed by the Charter Agreement.[2] Moreover, the allegations, once again, read as affirmative defenses of impossibility of performance and frustration of purpose, not counterclaims. *See* [ECF No. 45]. Thus, Counts I and II are dismissed with prejudice.

II.     **Count III: Breach of Contract**

Similarly, in Count III for breach of contract, Capital Jazz fails to plead the elements of its claim. Indeed, the allegations are simply that pursuant to the Charter Agreement via Amendment No. 2, the CDC's Notice relieved Capital Jazz of its obligations to proceed under the contract. [ECF No. 47 at ¶¶ 102, 103]. This, however, reads more as a defense. Again, Capital Jazz does not state what, if any, contractual provision RCCL breached. *See* [ECF No. 45]. Rather, the allegations point out how Capital Jazz's actions allegedly complied with the contract – a fact which Capital Jazz does not appear to dispute. *See* [ECF No. 63 at 14] ("Capital Jazz has established . . . that it acted . . . in accordance with the Charter Agreement [and that it] cannot be held liable to RCCL[.]"). Thus, Count III is dismissed with prejudice.

III.    **Counts IV and V: Breach of the Implied Warranty of Seaworthiness[3] and Breach of Warranty**

The "duty of a ship owner to provide a charterer with a ship fit for service is referred to as the warranty of seaworthiness." *Transatlantic Lines LLC v. Portus Stevedoring LLC*, No. 14-

---

[2] The Charter Agreement, as amended by Amendment No. 2, contains a force majeure clause detailing RCCL's liability in the event it must cancel the Jazz Cruise due to "Acts of God" and "pandemics, epidemics, or other health emergencies (including SARS-CoV-2/COVID-19)[.]" [ECF Nos. 10-2 at 20, 10-4 at 3 (under seal)].
[3] Count IV is titled "Breach of Charter" but, as addressed by both parties, *see* [ECF Nos. 54 at 10, 63 at 15], it is to be construed as a counterclaim for "Breach of the Implied Warranty of Seaworthiness."

7

60528-CIV-COHN/SELTZER, 2015 WL 4396754, at *2 (S.D. Fla. July 17, 2015). "The warranty of seaworthiness is a representation by the owner that the vessel is fit for the use for which it is chartered." *Transeas Marine Corp. v. Ed Ricke & Sons, Inc.*, No. 81-508-Civ-JM, 1982 WL 195704, at *3 (S.D. Fla. Feb. 26, 1982).

In its Motion, RCCL argues (1) that the agreement is not a charter and thus not subject to the Implied Warranty of Seaworthiness; and (2) that Capital Jazz failed to allege notice, a requisite element of a breach of warranty claim. The Court disagrees. Capital Jazz expressly alleges that it chartered the ship, *see* [ECF No. 47 at ¶¶ 8–12], and while the Charter Agreement may have a non-charter provision, it also contains references that could imply the existence of a charter, *see* [ECF No. 10-2 at 12, 32 (under seal)]. Even RCCL's complaint makes references to a charter. *See generally* [ECF No. 23]. Thus, this argument is one best addressed at a later stage. Additionally, Capital Jazz adequately alleged notice regarding the Ship's unseaworthiness. *See* [ECF No. 47 at ¶¶ 58–59]. At this stage of the pleadings, the allegations suffice. For similar reasons, Count V for Breach of Warranty is also adequately pled.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Dismiss, [ECF No. 54], is **GRANTED in part** and **DENIED in part** as follows:

1. Counts I, II, and III of Defendant's Amended Counterclaims, [ECF No. 47], are **DISMISSED with prejudice**.

2. Plaintiff's Motion to Dismiss Counts IV and V is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of November, 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

8